## (March 13, 1951.)

The People of the State of New York, Respondent, v. David Wichter, Defendant, and Edward Labis, Appellant.

Judgment affirmed.

Cohn, J. (dissenting). Appellant Labis and his codefendant Wichter were convicted of the misdemeanors of receiving excessive charges in connection with rental agreements (Penal Law, § 965) and of conspiracy to commit that crime (Penal Law, § 580).

Section 965 of the Penal Law provides in part as follows: *"Excessive charges in connection with rental agreements.* Any person who shall, directly or indirectly, solicit, request, demand, receive, collect or accept from another, or who agrees to solicit, request, demand, receive, collect or accept from another, any donation, gratuity, bonus, emolument, gift, payment or thing of value, in addition to lawful charges, upon the ☆ ☆ ☆ understanding ☆ ☆ ☆ that compliance with such request or demand will facilitate, influence or procure an

advantage over others in entering into an agreement * * *, for the lease or rental of real property * * *, or any person who shall refuse to enter into any such agreement unless he receives, directly or indirectly, any such donation, gratuity, bonus, emolument, gift, payment or thing of value, shall be guilty of a misdemeanor."

The charge against defendants was that they exacted rent bonuses of $100 from each of eight tenants for apartments in a building which the two defendants owned in the county of New York.

The building was a five-story multiple dwelling having two stores on the ground floor and eight apartments on the upper floors. For about ten years prior to the acquisition of the property by defendants on August 16, 1948, the four upper floors of the building had been boarded up and had been vacant. At considerable expense, defendants, after having purchased the building, completely renovated it and equipped it for occupancy for dwelling purposes by installing new bathrooms, putting in all new plumbing, fire-retarding the halls and walls, the cellar and the furnace room, adding new fire escapes and having an oil burner put in the building.

Between August 7, 1948, and January 27, 1949, while this building was in the process of being overhauled, each of the eight prospective tenants was required by defendants to pay the sum of $325 in order to secure one of the apartments.

The evidence shows that defendants in each instance requested and received $325 on the basis of asking $50 as the first month's rent, $175 as a deposit on a refrigerator which was thereafter to be installed in the apartment and $100 as a rent bonus or gratuity.

The housing accommodations had been created by defendants subsequent to February 1, 1947, and were not subject to control under the Federal rent control laws (Housing and Rent Act of 1947; § 202; U. S. Code, tit. 50, Appendix, § 1892). The only apparent restriction is to be found in section U41–9.0 of the New York City Administrative Code. This provided that in the case of housing accommodations in New York City which were created by alteration or conversion after February 1, 1947, the maximum rent which the landlord could charge was to be set at that figure to be established by agreement between the landlord and the first tenant who, after July 1, 1947, moved into the converted accommodations (New York City Administrative Code, § U41–9.0, subd. b, par. 4; subd. c, par. 2; as re-enacted by Local Laws, 1948, No. 43 of City of New York).

The obvious purpose of the Federal housing act in excluding from control converted dwellings of the type owned by defendants was to encourage the production of additional housing facilities. To interest landlords in investing capital in this work of restoration of abandoned structures that might be made suitable for housing accommodations, the landlord was permitted to charge to tenants for apartments in the rehabilitated premises whatever rent he chose to fix.

As shown above there was no limit to the amount that the appellant could charge any of the eight tenants for the first month's rent. Any rental that the landlord could obtain in the circumstances by agreement with a prospective tenant would have been entirely legal.

Even if the appellant first contemplated renting the apartments for $50 monthly but instead took advantage of the housing shortage and demanded and received $150, there would have been no violation of the law. The excess received by him over and above the price which he may have had originally fixed in his mind might have been labelled by him as a bonus. However, regardless of how

he characterized a portion of the sum paid or what his mental operation might have been, the total amount received is nothing more than the actual rent for the first month.

Irrespective of how the charge in the case at bar (exclusive of the $175 deposit on the refrigerator) was broken down by appellant himself, it was in fact the first month's rental and nothing " in addition " thereto. It may well be that the charge was excessive in the sense that it was more than the sound rental value. However, a landlord who has made habitable and tenantable, abandoned property by extensive renovations, is not barred from demanding and receiving what might be regarded as an excessive rental from the first tenant who occupies a rehabilitated apartment.

As appellant could not have been guilty of a violation of section 965 of the Penal Law, it follows that he could not have been guilty of a conspiracy (Penal Law, § 580) to violate that statute.

For the foregoing reasons the judgment of conviction of appellant should be reversed upon each count, the information should be dismissed and the fines remitted.

Peck, P. J., Shientag and Heffernan, JJ., concur in decision; Cohn, J., dissents and votes to reverse and dismiss the information and remit the fines, in an opinion in which Van Voorhis, J., concurs.

Judgment affirmed. No opinion.